# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| United States of America, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) Criminal Action Number ) 06-00324-01-CR-W-FJG |
| Javier Cazares-Saenz, | ) ) |
| Defendant. | ) |

## Report and Recommendation

Pending before the Court is DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS AND REQUEST FOR EVIDENTIARY HEARING WITH SUGGESTIONS, filed October 31, 2006 (Doc. #19). On December 5, 2006 and December 20, 2006, the undersigned held evidentiary hearings on the defendant's motion. Defendant Cazares-Saenz was present and was represented by his counsel, John Lozano and Henri Watson. The government was represented by Assistant United States Attorney David Barnes. At the evidentiary hearings, the government called Officer Sean Allwood, and Officer Wayne Harley as witnesses. The defendant called Officer Desiree Campbell as a witness and also testified on his own behalf. Additionally, the following exhibits were admitted into evidence: Gov't #1 (a shotgun), Gov't #1A (12 ga. rounds of ammunition), and Gov't #1B (34 rounds of ammunition)

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT**[1]

1. On September 12, 2006,[2] officers Sean Allwood and Desiree Campbell of the Independence (Mo.) Police Department were on road patrol on the "hotel corridor" located on Noland Road in Independence. Tr. at 4A-5A, 5B-6B.[3]

2. On that date, Officers Allwood and Campbell stopped by the American Inn Motel at 4141 Noland Road. Tr. at 5A, 6B.

3. The officers routinely stop by at the motels on Noland Road and talk to the management to inquire if there are any problems (because of the high crime history of the neighborhood, including drug trafficking and prostitution). Tr. at 5A-6A, 7B.

4. On September 12, 2006, Officer Allwood spoke with the manager at American Inn (Mr. Don White) and was advised that one of the housekeepers (Ms. Grissell Hernandez) had observed a male guest carrying a large firearm (described as a "machine gun") from his vehicle to his room that he tried to conceal by covering it with a sheet. Tr. at 6A-7A, 46A, 51A-52A, 7B.

---

[1] To the largest extent possible, the Court has endeavored to limit its findings to only those factual and legal matters necessary to the recommendation rendered herein, leaving aside other collateral and/or moot issues. In particular, these findings do not address the testimony from Mr. Saenz and Detective Wayne Hartley with regard to a statement allegedly made by Mr. Saenz on September 15, 2006, to Detective Hartley. At the hearing on December 20, 2006, the government agreed that it would not seek to introduce that statement at trial, effectively mooting any motion to suppress regarding the statement.

[2] In making these findings, the Court, at times, was required to resolve discrepancies between the testimony of witnesses, in particular the three witnesses testifying about the encounter at the motel (Allwood, Saenz, and Campbell). In making such credibility decisions, the Court took into account (1) the demeanor of the witnesses on the stand; (2) the interest the witnesses had in the outcome of the trial; (3) the opportunity of the witnesses to hear, observe, and recall what was said or done; and (4) any conflicts within a given witness' testimony. However, the Court has not undertaken to catalog in this order every credibility finding and the failure to specifically mention any particular testimony or documentary evidence herein is an indication that the Court did not find such evidence to be persuasive and/or credible. In general, the Court concluded that Mr. Saenz' recollection of events was, in large measure, <u>not credible</u>, while the recollections of Officers Allwood and Campbell were more credible.

[3] Page number references to the hearing transcript from December 5, 2006, are denoted with an "A" following the page number, while Page number references to the hearing transcript from December 20, 2006, are denoted with a "B" following the page number.

5. The officers had been provided information and complaints about prior occasions by the management at the American Inn regarding suspicious and/or criminal behavior and the information had always been reliable. Tr. at 33B-34B.

6. Ms. Hernandez identified the guest as staying in Room 144 and identified the guest's vehicle in the motel parking lot as a white Cadillac Escalade. Tr. at 7A-8A.

7. Based on the information, Officer Allwood had the manager check the motel guest registry and was told that Room 144 was registered to Javier Saenz. Tr. at 7A.

8. In addition, Officer Allwood went into the parking lot and checked on the white Escalade and noted that it had a temporary license tag from the State of Kansas that appeared to have been altered. Tr. at 7A-8A.

9. In addition, the manager of the motel informed Officer Allwood that the guest in Room 144 was possibly the same guest who had stayed at the motel two weeks prior with a female companion and had caused considerable damage to their motel room. Tr. at 9A.

10. The manager had told this earlier guest not to come back to the property. Tr. at 9A.

11. The manager then pulled the old guest registry to look up the information for the earlier guest and discovered that the prior guest drove a white Escalade with the same temporary license tag from the State of Kansas. Tr. at 9A, 32A.

12. At that point, Officers Allwood and Campbell were concerned about a possible stolen vehicle (because of the seemingly altered temporary license tags), trespass and disorderly conduct (because of the prior incident at the motel), and illegal firearm (based on the description of a machine gun), and officer and public safety (because of the gun sighting). Tr. at 9A-10A, 45A-46A, 7B, 9B.

13. Prior to approaching Room 144, Officer Allwood called for additional officers to respond to the scene. Tr. at 10A, 26A-27A, 7B-8B.

14. As Officers Allwood and Campbell approached the door to Room 144, they were joined by three other police officers from Independence. Tr. at 10A, 25A-27A, 7B.

15. At approximately 8:35 a.m., Officer Allwood proceeded to knock loudly on the door to Room 144 for several minutes without receiving any response. Tr. at 10A, 77A, 9B.

16. Then while the officers were discussing their next option, Mr. Saenz opened the door. Tr. at 10A, 9B.

17. Mr. Saenz came to the door with wet hair wearing a pair of jeans but had no shirt on.  Tr. at 28A, 78A.

18. Mr. Saenz said that he had been taking a shower.  Tr. at 28A, 77A, 9B, 26B.

19. The officers then immediately made contact with Mr. Saenz, pulled him out of the room and checked him for weapons.  Tr. at 11A, 25A, 28A, 15B, 23B-24B.

20. Mr. Saenz was then handcuffed with his hands behind his back and asked to sit on the ground to prevent flight which Mr. Saenz did without force or coercion.  Tr. at 9B-10B, 24B, 27B.

21. Two officers then entered the motel room and did a quick walk-through to make sure that no one else was present in the motel room.  Tr. at 11A, 10B-11B.

22. The protective sweep took approximately one minute.  Tr. at 11B.

23. Officer Allwood asked Mr. Saenz for identification and Mr. Saenz provided a Mexican identification card that was in poor condition.  Tr. at 13A, 13B.

24. Officer Allwood asked Mr. Saenz for his date of birth and Mr. Saenz gave a date close to, but different from, the date of birth shown on the Mexican identification card.  Tr. at 13A.

25. Officer Allwood then explained to Mr. Saenz that he had been seen with a firearm.  Tr. at 11A, 14B.

26. Officer Allwood then asked Mr. Saenz three times if he would allow the officers to search his motel room for the firearm that had been reported.  Tr. at 14A, 15B-17B.

27. Mr. Saenz consented to a search of his motel room on all three occasions (first by nodding his head and then twice by affirmatively stating that he was consenting).  Tr. at 14A-15A, 16B-17B, 29B.

28. Mr. Saenz was not given a *Miranda* warning nor told that he the right to not consent.  Tr. at 17B-18B.

29. The discussion between Officer Allwood and Mr. Saenz was in English and neither seemed to have any difficulty in understanding the other.  Tr. at 11A-12A, 13B-14B, 29B.

30. Officer Allwood made no threats in seeking consent.  Tr. at 14A, 28B.

4

31.     Officer Allwood did not put his hands on Mr. Saenz or try to intimidate him in obtaining the consent.  Tr. at 14A, 28B.

32.     Following Mr. Saenz' consent, some of the officers searched the motel room and found several items believed to be drug paraphernalia and a pair of brass knuckles (which are illegal in Independence).  Tr. at 15A, 17B-18B.

33.     A later field test revealed that approximately 4.5 grams of amphetamine/ methamphetamine were recovered from the motel room.  Tr. at 21A.

34.     The search of the motel room took less than ten minutes.  Tr. at 26B.

35.     Following the completion of the search of the motel room, Officer Allwood asked Mr. Saenz if there was anything he could have in his possession that could have been mistaken for a firearm.  Tr. at 17A.

36.     Mr. Saenz informed Officer Allwood that he had a paintball gun located in his vehicle, which he described as a white Cadillac Escalade.  Tr. at 17A, 19B.

37.     Officer Allwood then asked if Mr. Saenz would consent to a search of the white Escalade.  Tr. at 17A, 38A-39A, 19B-20B.

38.     Mr. Saenz affirmatively consented to a search of the white Escalade.  Tr. at 17A, 20B, 30B.

39.     Mr. Saenz was not told that he the right to withhold consent.  Tr. at 21B.

40.     The discussion between Officer Allwood and Mr. Saenz was in English and neither seemed to have any difficulty in understanding the other.  Tr. at 17A-18A, 30B.

41.     Officer Allwood did not threaten Mr. Saenz.  Tr. at 30B.

42.     The officers then searched the white Escalade and found a loaded (and illegal) sawed-off shotgun wrapped in a shirt on the backseat/driver's side floorboard.  Tr. at 18A-19A, 49A, 23B; Gov't #1.

43.     Mr. Saenz was then placed under arrest.  Tr. at 20A, 39A-40A, 22B-23B.

5

**PROPOSED CONCLUSIONS OF LAW**

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. Of importance to this case, it is established law that an exception to the warrant requirement of the Fourth Amendment is consent to search. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).[4]

---

[4] The government has only sought to justify the search of Mr. Saenz' motel room and vehicle based on Mr. Saenz' consent. The limited scope of the government's position is understandable. Although the illegal brass knuckles were seen in plain sight during the protective sweep, officers did not place Mr. Saenz under arrest at that time. Likewise, after the brass knuckles and drug paraphernalia were seized during a search of the motel room, Mr. Saenz was not placed under arrest at that time. Consequently, the warrantless searches of the motel room and (later) the vehicle cannot be justified as searches incident to an arrest or inventory searches. In addition, although it was later learned that Mr. Saenz was wanted on an outstanding warrant, such information was not available to the officers at the time the searches of the motel room and vehicle were undertaken.

6

It is well settled that merely because individuals are guests in a hotel, motel, inn or other temporary accommodation, they are still generally entitled to the same protections of the Fourth Amendment against unwarranted searches and seizures as they would enjoy in their homes. *See*, *e.g.*, *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997). Similarly, individuals enjoy the protections of the Fourth Amendment with regard to their vehicles.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. . . . Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. [P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63 (1979). However, just as with an individual's home, the protections of the Fourth Amendment's prohibition of warrantless searches attendant to a motel room or a vehicle may be diminished by a valid consent permitting law enforcement officers to conduct a warrantless search.

When searches conducted to consent are subsequently challenged by a defendant, the touchstone in analyzing a motion to suppress is whether the consent was voluntary. In broad strokes, consent to search is voluntary if it is "the product of an essentially free and unconstrained choice by its maker . . . rather than a product of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). To assist a court in making this ultimate determination, numerous factors relating to the person giving the consent and the

7

environment surrounding the consent have been articulated. For instance, with regard to a

defendant who consents, courts consider:

> (1) the defendant's age; (2) the defendant's general intelligence
> and education; (3) whether the defendant was under the influence
> of drugs or alcohol; (4) whether the defendant was informed of his
> *Miranda* rights prior to consent; and (5) whether the defendant had
> experienced prior arrests so that he was aware of the protections
> the legal system affords to suspected criminals.

*United States v. Alcantar*, 271 F.3d 731, 737 (8th Cir. 2001). With regard to the environment

surrounding a consent, courts will examine whether the person who consented:

> (1) was detained and questioned for a long or short time; (2) was
> threatened, physically intimidated, or punished by the police; (3)
> relied upon promises or misrepresentations made by the police; (4)
> was in custody or under arrest when the consent was given; (5)
> was in a public or secluded place; or (6) either objected to the
> search or stood by silently while the search occurred.

*United States v. Mancias*, 350 F.3d 800, 805 (8th Cir. 2003).

In this case, Mr. Saenz argues that his consents in this case were not voluntary in light of the fact that they were given "while [Mr. Saenz] was restrained of his liberty, half-naked, shoeless, handcuffed and surrounded by armed officers."[5] While Mr. Saenz' arguments have a great deal of superficial attraction, it is clear that the analysis must go beyond such basic facts. For instance, in *Mancias*, the Eighth Circuit concluded that a consent was not given in a coercive environment notwithstanding the fact that the defendant "was seated in the back seat of the patrol car and handcuffed at the time he gave his consent." *Id.* at 806. Accordingly, the Court

---

[5] Mr. Saenz also argues that the initial contact with officers at his motel room was a violation of the Fourth Amendment. *Compare United States v. Connor*, 127 F.3d 663, 665 (8th Cir. 1997) *with United States v. Barker*, 437 F.3d 787, 790 (8th Cir. 2005). The Court does not reach that issue inasmuch as, under the facts of this case, any constitutional invalidity in the officers' prior actions were purged by Mr. Saenz' consent, if such consent was voluntarily given. *See*, *e.g.*, *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

8

considers – in totality – the circumstances surrounding Mr. Saenz' consent to search his motel room and his vehicle.

This case presents a close call on the question of voluntariness. As pointed out by Mr. Saenz, he was handcuffed and surrounded by officers at the time he gave his two consents. Nor had Mr. Saenz been given a reading of his *Miranda* rights or told that he was free to refuse to consent. However, these latter details, while factors to consider, are not dispositive. *United States v. Becker*, 333 F.3d 858, 861 (8th Cir. 2003). Weighing in favor of reasonableness, however, are other considerations:

(1) after the initial contact with law enforcement officers (when he was placed in handcuffs and asked to be seated), Mr. Saenz was not coerced or intimidated (physically or verbally) by officers at the scene nor did officers make any promises or misrepresentations to Mr. Saenz,

(2) although English is apparently not Mr. Saenz' primary language, he interacted with officers at the scene in a knowing and intelligent manner,

(3) although it is not clear in the record whether Mr. Saenz had been arrested before, it is evident that he had an arrest warrant issued for him at the time of the search and Mr. Saenz was familiar enough with the legal system and his rights to invoke the right to counsel when first interrogated following his arrest,

(4) although handcuffed and seated, Mr. Saenz was in a public area,

(5) the questioning of Mr. Saenz was brief with the entire time lapse between when he answered his motel room door to consenting to the search of his vehicle covering only about 10-11 minutes, and

(6) there is no evidence that Mr. Saenz was impaired at the scene,

(7) based on his appearance and demeanor before the Court, Mr. Saenz possesses the requisite intelligence and common sense to appreciate the consequences and meaning of consenting to a search,

9

(8) Mr. Saenz never refused consent to the searches (including the vehicle search that occurred after the room search when he clearly would have understood the consequences of consenting), and

(9) the consents given by Mr. Saenz were affirmative and unambiguous.

Bearing in mind that the factors for voluntariness are "not [to] be applied mechanically," *United States v. Chaidez*, 906 F.3d 377, 381 (8th Cir. 1990), the Court, looking to the totality of the circumstances, concludes that the evidence in this case adequately "demonstrate[s] that 'the police reasonably believe[d] the search to be consensual.'" *United States v. Zamoran-Coronel*, 231 F.3d 466, 469 (8th Cir. 2000) (*quoting*, *in part*, *United States v. Sancjez*, 156 F.3d 875, 878 (8th Cir. 1998)).

Accordingly, it is

**RECOMMENDE**D that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS AND REQUEST FOR EVIDENTIARY HEARING WITH SUGGESTIONS, filed October 31, 2006 (Doc. #19).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

               */s/ John T. Maughmer*  
               **JOHN T. MAUGHMER**  
               **U. S. MAGISTRATE JUDGE**